## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **LOWER COLORADO RIVER AUTHORITY,** | § § § | |
| **Plaintiff,** | § § | |
| **vs.** | § § | **CIVIL ACTION NO.** |
| **PAPALOTE CREEK II, L.L.C. f/k/a PAPALOTE CREEK WINDFARM, L.L.C.,** | § § § § | **1:19-CV-00284** |
| **Defendant.** | § § | |

## COMPLAINT

Plaintiff Lower Colorado River Authority (LCRA) complains of Defendant Papalote Creek II, L.L.C. f/k/a Papalote Creek Wind Farm II, L.L.C. (Papalote) as follows.

## PARTIES

1.      LCRA is a Texas conservation and reclamation district and, therefore, a political subdivision of the State of Texas.  Its principal place of business is in Austin, Texas.

2.      Papalote is a Delaware limited liability company whose principal place of business is in Austin, Texas.  It can be served with process by serving its registered agent, C T Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over LCRA's claims because LCRA and Papalote, including each of Papalote's members and their members, are citizens of different states and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to LCRA's claims occurred in this district.

## BACKGROUND

**A.    The Parties' Power Purchase Agreement.**

5.    In December 2009, LCRA entered into a power-purchase agreement (the PPA) with Papalote, the owner of a south Texas wind project (the Project) that generates electricity. The PPA requires LCRA either to purchase all of the electricity generated by the Project at a fixed price or to pay Papalote "liquidated damages" for the Project's electricity that it does not purchase during the PPA's eighteen-year term.  If, however, LCRA fails to purchase fifty percent of the Project's electricity for a period of sixty consecutive days, Papalote can terminate the PPA and recover a "Termination Payment," which essentially is the present value of the positive difference, if any, between the contract price and the market price for the electricity not taken by LCRA during the PPA's remaining term.

6.    Notwithstanding these obligations, Section 9.3 of the PPA is a limitation of liability provision providing:

> **9.3    Limitation on Damages for Certain Types of Failures**. Notwithstanding anything to the contrary in this Agreement, Seller's aggregate liability for (i) failure of Seller to construct the Project and/or (ii) failure of one hundred percent (100%) of the Project's Turbines to achieve the Commercial Operation Date on the Scheduled COD and/or (iii) failure of one hundred percent (100%) of the Project's Turbines to achieve the Commercial Operation Date on June 1, 2011 and/or (iv) a Termination Payment, shall be limited in the aggregate to sixty million dollars ($60,000,000).  Buyer's damages for failure to perform its material obligations under this Agreement shall likewise be limited in the aggregate to sixty million dollars ($60,000,000).

7.    Section 13 of the PPA is an arbitration provision that permits either party to the PPA to submit to binding arbitration any dispute regarding any Party's performance under the PPA in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

**B.      The Dispute About The Meaning Of The PPA's Liability Limitation.**

8.      In Texas, the wholesale price of electricity is tied to natural gas prices.  Since the PPA's execution those prices have dropped substantially.   As a result, by the spring of 2015, the price of electricity under the PPA greatly exceeded the market price.   Because LCRA's governing statute and customer contracts require LCRA to charge its customers only the "reasonable" cost of providing electricity,[1] LCRA, in the spring of 2015, engaged in a series of telephone calls and meetings with Papalote's representatives about LCRA's interpretation of Section 9.3 of the PPA, the liability limitation (i.e., its belief that the provision's literal language capped its liability at $60,000,000 for a failure to take or pay for the Project's electricity) and the PPA's possible restructuring (i.e., a price or quantity reduction) in light of that interpretation.

9.      Papalote declined to restructure the PPA and, even though it disagreed with LCRA's construction of Section 9.3 of the PPA, refused to tell LCRA the bases for its disagreement.  Because Section 13 of the PPA requires all performance-related disputes to be arbitrated and because LCRA believed that the dispute about Section 9.3's was a performance-related one, LCRA, on June 19, 2015, sent Papalote a notice initiating arbitration under the PPA's arbitration provision to resolve the dispute.  Papalote refused to arbitrate, forcing LCRA to file a lawsuit in state district court in Travis County to compel it to do so.

10.      Papalote removed the lawsuit to this Court, where it was assigned to Judge Sam Sparks.   Papalote argued that the PPA's arbitration provision applied solely to performance-related disputes and that LCRA's claim regarding the meaning of Section 9.3 of the PPA was not such a dispute.  Papalote also claimed that the underlying dispute was not ripe because LCRA

---

[1] *E.g.*, Tex. Local Gov't Code § 8503.011 (LCRA's "fees and charges must be reasonable").

had neither breached nor anticipatorily breached the PPA by either failing to purchase all of the Project's electricity or threatening not to purchase it.

11.     On February 24, 2016, Judge Sparks issued an order compelling arbitration. After concluding that the PPA's arbitration provision was limited to performance-related disputes, he held that LCRA had presented such a dispute.  *Lower Colo. River Auth. v. Papalote Creek II*, L.L.C., No. A-15-CA-656-SS, 2016 U.S. Dist. LEXIS 22277 (W.D. Tex. Feb. 24, 2016).

12.     With respect to "ripeness," Judge Sparks, believing that Papalote neither had properly raised nor sufficiently briefed the issue, left it "for another day," noting that "Papalote is, of course, free to raise any ripeness arguments before the arbitrator."  Because his order resolved the case, Judge Sparks entered final judgment in LCRA's favor, ordering "the parties [to] arbitrate their claims in the manner provided for in the arbitration agreement . . . ."  *Id.* at *15.

13.     Papalote appealed the judgment and filed a motion to stay arbitration pending the appeal, claiming that it was likely to prevail on appeal on the ripeness issue that it had barely mentioned in its opposition to the motion to compel.  Judge Sparks denied the motion, *Papalote Creek II, L.L.C. v.  Lower Colo. River Auth.*, No. A-16-CA-1097-SS, 2017 U.S. Dist. LEXIS 211621, at *1 (W.D. Tex. Aug. 25, 2017), and the parties proceeded to arbitration.

14.     LCRA prevailed in the arbitration, with the arbitrator issuing her award on June 28, 2016.  The award provided, in pertinent part, that: "[T]he arbitrator finds and declares that: Under Section 9.3 of the [PPA], LCRA's liability for liquidated damages and/or a Termination Payment for its failure to take power under the [PPA] is limited to $60,000,000."

15.    On October 10, 2016, LCRA advised Papalote that "(1) LCRA will not be taking any electricity under the PPA from October 12, 2016, through the term of the PPA, and (2) as required by Section 4.3, LCRA will pay liquidated damages within five days after its receipt of the invoice required by Section 4.3."  LCRA has been paying liquidated damages in lieu of taking electricity under the PPA since October 12, 2016.

16.    On May 31, 2017, the United States Court of Appeals for the Fifth Circuit (the Fifth Circuit) vacated Judge Sparks' judgment and remanded the case for further proceedings consistent with the Fifth Circuit's opinion.  *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 917 (5th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 747 (2018).

17.    Papalote then moved Judge Sparks to lift the stay in this case and vacate the arbitration award, claiming the award was void because the district court lacked jurisdiction to order the arbitration.  LCRA responded by, among other things, cross-moving for an order compelling a new arbitration because the dispute about the meaning of Section 9.3 of the PPA is an arbitrable, performance-related one.  Judge Spark granted both motions, entering an order lifting the stay, vacating the arbitration award, and ordering a new arbitration.  *Papalote Creek II, L.L.C. v. Lower Colo. River Auth.*, No. A-16-CA-1097-SS, 2017 U.S. Dist. LEXIS 211621, at *8 (W.D. Tex. Aug. 25, 2017).

18.    Papalote appealed the judgment to the extent it ordered a new arbitration.  On March 15, 2019, the Fifth Circuit reversed that order, holding that the dispute about the meaning of Section 9.3 of the PPA was not performance-related, and remanded the case for further proceedings consistent with its opinion.  *Papalote Creek II, L.L.C. v. Lower Colo. River Auth.*, No. 17-50852, slip. op. (Mar. 15, 2019).

## CAUSE OF ACTION

19.     This is a cause of action under 28 U.S.C. §§ 2201-02 for declaratory relief about the meaning of Section 9.3.

20.     A dispute exists between the parties about the meaning of Section 9.3 of the PPA. LCRA seeks a declaratory judgment that, under that provision, its liability for liquidated damages and/or a "Termination Payment" for its failure to purchase electricity under the PPA is limited to $60,000,000.

**Wherefore**, LCRA demands that, after trial, the Court issue a judgment:

1.     declaring that, under Section 9.3 of the PPA, LCRA's liability for liquidated damages and/or a "Termination Payment" for its failure to purchase electricity under the PPA is limited to $60,000,000, and

2.     awarding LCRA its costs of suit and any other relief to which it is justly entitled.

Respectfully submitted,

**LILLARD WISE SZYGENDA PLLC**

By: */s/ Robert K. Wise* _____

    Robert K. Wise
    Texas Bar No. 21812700
    bwise@lwsattorneys.com
    Andrew J. Szygenda
    State Bar No. 24033251
    aszygenda@lwsattorneys.com

13760 Noel Rd., Suite 1150
Dallas, Texas 75240
214 • 739 • 2000  Telephone
214 • 739 • 2010  Fax

     – and –

Leigh H. Sebastian
Texas Bar No. 24027843
leigh.sebastian@lcra.org
LOWER COLORADO RIVER AUTHORITY
P. O. Box 220
Austin, Texas 78767
(512) 578-3559  Telephone
(512) 473-4010  Fax

**ATTORNEYS FOR PLAINTIFF**
**LOWER COLORADO RIVER AUTHORITY**